IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP BAZZLEY, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION NO. 21-2256 |
| | : | |
| v. | : | |
| | : | |
| MORRIS HOUSER, Superintendent; THE | : | |
| DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF BERKS; and THE | : | |
| ATTORNEY GENERAL OF THE STATE | : | |
| OF PENNSYLVANIA, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                     July 28, 2022

Over a decade ago, the Commonwealth charged the petitioner with sexual abuse crimes committed against foster children visiting his home, perpetrated while he was a teenager. After a non-jury trial, the trial judge found the petitioner guilty of three counts of involuntary deviate sexual intercourse, four counts of indecent assault, two counts of indecent exposure, and two counts of open lewdness. The trial court imposed an aggregate sentence of 19.5 to 60 years of incarceration, followed by 11 years of probation. The petitioner unsuccessfully challenged his conviction and sentence on direct appeal and post-conviction collateral review.

Presently before the court is the petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254. This court referred the petition to a Magistrate Judge, who issued a report recommending the court deny the petition and decline to issue a certificate of appealability. The petitioner has filed four objections to the report. After reviewing these objections and the report and recommendation, the court finds that the objections lack merit. Nonetheless, the court has identified an issue with one of the claims that requires the court to decline to adopt that portion of

the report; however, this does not affect the court's overall conclusion that the petitioner is not entitled to habeas relief. Accordingly, the court will overrule the objections, approve and adopt the report and recommendation except as noted in this opinion, deny the habeas petition, and decline to issue a certificate of appealability.

## I.    PROCEDURAL HISTORY

When he was a young teen, the petitioner, Phillip Bazzley ("Bazzley"), sexually abused two foster children, who were four and six years old at the time, over a period of several months while the children were spending time before and after school in Bazzley's family home.[1] *See Commonwealth v. Bazzley*, No. 1014 MDA 2012, 2013 WL 11262931, at *1 (Pa. Super. June 7, 2013) ("*Bazzley I*"). On April 1, 2008, the Berks County District Attorney's Office was made aware of the sexual abuse allegations. *See id*. at *2. On June 24, 2009, Bazzley provided a detective with a statement admitting to some of the alleged sexual contact. *See id*. Thereafter, the Commonwealth filed a criminal complaint against Bazzley, charging him as an adult, on January 13, 2010.[2] *See id*.

Believing that Bazzley's case should be in juvenile court and that Bazzley had a mental health defense to the charges, his counsel filed (1) a motion to transfer the case to juvenile court, (2) a notice of his intent to present an insanity defense and an infancy defense, and (3) an omnibus pretrial motion which included, *inter alia,* "a motion to permit the infancy defense, a motion to dismiss because of a violation of his due process rights, and a motion to dismiss based on his insanity defense." *Id.* In response to Bazzley's notice of intent to present an insanity defense, the trial court ordered Bazzley to submit to a mental health evaluation with the Commonwealth's

---

[1] The children were not fostered by the Bazzley family. *See Bazzley I* at *1.
[2] Had the Commonwealth filed charges immediately following the initial report in April 2008, it would have had to prosecute Bazzley's case in juvenile court.

expert.[3] *See id.* The trial court later denied Bazzley's request to have his case transferred to juvenile court and his omnibus pretrial motions. *See id.*

Bazzley waived his right to a jury trial, and the matter proceeded to a bench trial. At the conclusion of trial, during which the victims testified, the trial court found Bazzley guilty of three counts of involuntary deviate sexual intercourse, four counts of indecent assault, two counts of indecent exposure, and two counts of open lewdness. *See id.* at *1. On April 20, 2012, the trial court sentenced Bazzley to 19.5 to 60 years of incarceration, followed by 11 years of probation. *See id.* at *2. Bazzley timely filed a post-sentence motion, which the trial court denied. *See id.*

Bazzley filed a timely notice of appeal, and the Pennsylvania Superior Court affirmed his judgment of sentence on June 7, 2013. *Id.* at *1. Bazzley filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on January 21, 2014. *See Commonwealth v. Bazzley*, No. 1553 MDA 2019, 2020 WL 2520283, at *2 (Pa. Super. May 18, 2020) ("*Bazzley II*").

On April 11, 2014, Bazzley, proceeding *pro se*, filed a timely PCRA petition. *Id.* at *2. On December 7, 2018, court-appointed counsel filed an amended PCRA petition. *Id.* The court held an evidentiary hearing, the relevant testimony from which, as summarized by the PCRA court, is as follows:

> At the PCRA hearing, [PCRA] counsel first called Dr. Larry Rotenberg who testified that he first met with [Bazzley] in 2010 prior to his trial and then again in 2017. During the interviews, [Bazzley] was very honest, cooperative and forthcoming. Dr. Rotenberg testified that [Bazzley] is very suggestable[,] and at the time of his trial, [he] was under the influence of a religious group, and in particular, of one individual who purportedly assured [Bazzley] that he would be acquitted of all charges at trial through divine intervention. Dr. Rotenberg continued that at the time that a generous plea offer was proffered by the district attorney's office, [Bazzley's] mental capacity to appropriately weigh the benefits and advantages of the plea offer were compromised by his intense religious belief, which was delusional. [Dr. Rotenberg defined "delusional" as meaning "a fixed, false, unshared belief."]

---

[3] Bazzley later filed a supplemental omnibus pretrial motion where he asserted a violation of his Sixth Amendment right to counsel. *See Bazzley I* at *2.

Dr. Rotenberg also interviewed [Bazzley's] mother, sister[,] and his first cousin. Interviews with [Bazzley's] family members indicated that at the time of the plea offer and trial, [Bazzley] was in a "weakened state of mind and was not really in a position to make a decision about the plea offer." Further, Dr. Rotenberg opined that [Bazzley's] heightened vulnerability made him especially susceptible to the sway of individuals in [Bazzley's] church whom [Bazzley] referred to as "prophets."

After interviewing [Bazzley] in 2017, Dr. Rotenberg diagnosed [Bazzley] with **schizoid personality disorder** and with a learning disability noting [Bazzley's] verbal I.Q. of 74. [Bazzley's] religious preoccupation, which Dr. Rotenberg equivocated to delusion, coupled with the nature of the charges[,] caused [Bazzley] to isolate himself and rendered [Bazzley] "incapable of seeking other and more constructive advice." Dr. Rotenberg testified his opinion was that [Bazzley] was not competent to make a decision as to the plea bargain because of his low I.Q. and his delusional state at the time. A significant basis of Dr. Rotenberg's opinion was that the plea offer was so generous that no adult would decline such an offer and that [Bazzley's] decision to reject the offer was so contrary to his own interest that it should have triggered a supplemental psychiatric evaluation to determine whether [Bazzley] was competent to refuse the offer.

On cross-examination, Dr. Rotenberg indicated that he had not earlier discussed the issue of the plea agreement with [Bazzley] and that all [of] the information garnered regarding the current issue was gleaned from his conversations with [Bazzley] in 2017. Further, Dr. Rotenberg opined that the issue of [Bazzley's] competency to stand trial and [Bazzley's] competency to accept or reject a plea offer were different standards.

Tiffany Bazzley, [who is Bazzley's] sister, testified that she spoke with [Bazzley's] Trial Counsel numerous times leading up to and during the trial. Tiffany explained that she told Trial Counsel that [Bazzley made statements] to her on several occasions regarding the "prophets" and having visions of being delivered from the case. This, Tiffany believed, indicated that [Bazzley] was not competent to stand trial. According to Tiffany, Trial Counsel responded that "if he would have knew [*sic*] that then, then he would not had [*sic*] him stand trial." Tiffany further testified that she and [Bazzley] normally have a good relationship, but that at the time of the trial, [Bazzley] was distant and that when she would talk to [Bazzley], he seemed like he didn't understand.

Tiffany observed Trial Counsel explain to [Bazzley] that he believed a bench trial [as opposed to a jury trial] would be a better option for [Bazzley] to avoid further embarrassment. Tiffany stated that Trial Counsel was not expecting [Bazzley] to receive the sentence imposed. While she asserted that she was available to testify at trial that [Bazzley] was not competent enough to testify on his own behalf, Trial Counsel indicated to her that he didn't believe that Tiffany's [testimony] would be helpful.

4

Valerie Bazzley, [who is Bazzley's] mother, testified that she was present during discussions between [Bazzley] and Trial Counsel in which Trial Counsel advised that a bench trial would be more advantageous to [Bazzley] regarding [Bazzley's] performance before the jury and his understanding of the medical terms involved. Valerie did not observe Trial Counsel discussing the plea agreement with [Bazzley], but [she] stated that Trial Counsel informed [Bazzley] that the decision had to be made immediately.

Valerie indicated that at the time of the trial, [Bazzley] was unresponsive to her efforts to communicate with him and that [Bazzley] was not eating or sleeping. [Bazzley] informed Valerie about two individuals who told him that he would go free and not have to serve any time; however, Valerie did not discuss these revelations with Trial Counsel. Valerie was able to testify at [Bazzley's] trial and spoke to Trial Counsel about testifying. Valerie testified that she repeatedly informed Trial Counsel of [Bazzley's] mental condition and stressed that [Bazzley] was not competent.

[Bazzley] took the stand and testified that Trial Counsel presented three different plea offers from the Commonwealth regarding his case. [Bazzley] understood the first offer to be "very, very high," and he did not remember the second offer. Upon receipt of the third offer, which [Bazzley] remembered being six to twenty-three months of county incarceration, Trial counsel gathered [Bazzley] and his family to discuss the plea, but that [Bazzley] eventually rejected the offer. [Bazzley] stated that he rejected the third offer based on his encounter with two individuals, whom [Bazzley] referred to as "prophets." The first individual told [Bazzley] that he had seen court papers ripped up on his behalf. The other individual, whom [Bazzley] identified as "Jarvis," stat[ed] that "he was the head ... of the band [he] was playing for," [and] told [Bazzley] to continue the fight because "God has you."

[Bazzley] acknowledged that Trial Counsel did discuss the plea offers with him, but that he didn't remember everything that Trial Counsel told him and that he did not understand. [Bazzley] stated that Trial Counsel was "kind of like rushing" him to make a decision as to the plea offers and that [Bazzley] made his decision to reject the offer base don [*sic*] what the "prophets" had told him. [Bazzley] denied that Trial Counsel attempted to persuade him to accept the offer or that Trial Counsel explained the advantages and disadvantages of going to trial versus accepting the plea agreement.

When asked if he could describe a bench trial, [Bazzley] answered that "A bench—a Bench Trial is I [*sic*] sitting in front of the, I guess, Judge or something, yeah like, that's what I thought it was." [Bazzley] testified that he did not know what a finder of fact, waiver[,] or a jury trial waiver colloquy was.

On cross-examination, [Bazzley] admitted that Trial Counsel was also representing him in another matter in Montgomery County, Pennsylvania, around the same time, in which he entered a guilty plea. [Bazzley] admitted that Trial Counsel explained

various legal terms to [him] and to his family at the time of the trial, [al]though he claims that he did not understand them.

The Commonwealth called Trial Counsel, who testified that he was initially retained to represent [Bazzley] in the Montgomery County matter that resulted in [Bazzley] entering a plea in return for a favorable sentence. Upon initiation of the instant case, Trial Counsel became involved and represented [Bazzley] beginning with accompanying [Bazzley] when he turned himself in to law enforcement. Trial Counsel testified that he attempted to have the matter transferred to juvenile court and to have the matter dismissed for delay in prosecution, but both motions were denied.

During [Bazzley's] trial, Trial Counsel observed [Bazzley] and stated that he believed [Bazzley] to be limited, but not incompetent. In his dealings with [Bazzley], Trial Counsel found that [Bazzley] understood the role of the attorneys and that of the judge, as well as [had] an understanding of the charges he was facing and the potential penalties that he faced, with no suggestion that [Bazzley] was so limited that he was prevented from understanding the court system.

[Bazzley's] family indicated to Trial Counsel that [Bazzley] had a limited understanding of things, which prompted Trial Counsel to have [Bazzley] evaluated by Dr. Rotenberg. Specifically, [Bazzley's] family told Trial Counsel that [Bazzley] had severe learning disabilities that were manifest at the time the crimes occurred. This information prompted Trial Counsel to have the evaluation performed to determine whether [Bazzley] could even form the criminal intent at that earlier age, providing what may possible [*sic*] be an insanity defense. While Trial Counsel did not indicate that he questions [Bazzley's] competency to stand trial, competency was part of the standard evaluation performed by Dr. Rotenberg, as well as for M'Naughten Rule defense and for guilty but mentally ill.

Trial Counsel further explained that there was never a time when he believed that [Bazzley] misunderstood his words, but that he may have had to repeat some things two or three times before he felt that [Bazzley] understood. Trial Counsel believed that [Bazzley] acknowledged what was being said and that Trial Counsel would hold meetings in the presence of family members, including [Bazzley's] sister and mother, so that they understood the issues[,] and if [Bazzley] wished, he could discuss with them as well. Whether in meetings alone with [Bazzley] or during those including [Bazzley's] family, Trial Counsel always believed that [Bazzley] understood what was happening. On the day of the plea deal, [Bazzley] told Trial Counsel that he would reject the offer based upon his faith, without indicating anything about visions or prophets, and therefore, the matter proceeded to trial.

Trial Counsel indicated that [Bazzley's] family did not mention anything as to the supposed prophets until after sentencing in the matter. While Trial Counsel and [Bazzley] discussed [Bazzley's] religious beliefs on several occasions, those conversations did not pertain to [Bazzley] having visions himself or of the

"prophets." It wasn't until a few days after sentencing, [*sic*] that Trial Counsel stated he received a call from Tiffany indicating that [Bazzley] needed to speak with him about something important. When Trial counsel went to visit [Bazzley,] [it] was the first time that [Bazzley] told Trial Counsel that the reason he had rejected the plea offer was due to the visions of prophets and to the statements that the prophets made.

Trial Counsel recounted his efforts in conducting discussions with the district attorney's office in attempting to find a non-trial resolution to the matter and that there were several plea offers presented. Trial Counsel communicated the plea offer to [Bazzley] and his family, and likewise to Dr [*sic*] Rotenberg, who agreed that the plea would provide a good outcome. In communicating the plea offer to [Bazzley], Trial Counsel remembered telling [Bazzley] that the offer was for only six months of county incarceration whereas [Bazzley] faced the possibility of years in jail due to the several counts that carried mandatory minimum sentences. The offer had to be accepted prior to the time of trial, which is not uncommon.

Trial Counsel further explained that he suggested a bench trial [as opposed to a jury trial] for several reasons. First, the victims in the case were children[.] Trial Counsel had witnessed prior jury trials where child victims were involved and believed that once a jury heard the testimony of the children, they are often unreceptive to further testimony or evidence, especially as to defenses. Trial Counsel also believed that the complexity of the case, specifically as to the not guilty by reason of insanity defense, would cause issues as to the jury's understanding. Trial Counsel believed that having a fact-finder that was experienced in the law and who would understand the complexity of an insanity defense would serve [Bazzley] better. Trial Counsel discussed the options and his recommendations with [Bazzley,] and [he] reviewed the jury trial waiver finding no indication that [Bazzley] did not understand the contents thereof.

Trial Counsel also addressed the reasons for not calling [Bazzley's] family as witnesses at trial. First, Trial Counsel believed that the family's testimony would be cumulative to Dr. Rotenberg's testimony and would not bode favorably in the courtroom. Next, given the narrow scope of allowable testimony, he felt that there was a strong possibility that the family might testify beyond that scope and confuse[,] or even worse, contradict Dr. Rotenberg's testimony. Additionally, Trial Counsel wanted to ensure that testimony regarding [Bazzley's] Montgomery County case [and] the circumstances surrounding the case would not enter the record in the matter at trial. Trial Counsel was concerned about the possibility that prior accusations of inappropriate sexual conduct towards minors might enter the record. Specifically, there were prior accusations of sexual misconduct that weren't formally charged, but for which [Bazzley] was referred to treatment and his mother was heavily involved. Trial Counsel did not want to risk exposure of the earlier accusations and wanted to limit the scope of evidence and testimony to the period during which the crimes occurred.

7

> Trial Counsel testified that he has significant experience in dealing with clients with developmental issues, including those with learning disabilities, as well as clients who have been diagnosed with schizoid personality disorder. Trial Counsel admitted to encountering some problems communicating with [Bazzley]. Trial Counsel testified that [Bazzley's] family was very involved during the proceedings .... [T]hey were often present when he was communicating with [Bazzley], and [he] would also separately provide information to the family as to the case status. Trial Counsel believed that [Bazzley] clearly understood their discussions because [Bazzley] would acknowledge the conversations, would respond appropriately[,] or would ask follow-up questions.

*Id*. at *2–6 (quoting Aug. 20, 2019 PCRA Ct. Op. at 4–10 (alterations in original) (internal citations omitted)). On August 20, 2019, the PCRA court denied Bazzley's petition. *Id*. at *6. Bazzley appealed to the Superior Court, which affirmed the PCRA court's denial on May 18, 2020. *Id*. at *1. Bazzley then petitioned for review by the Pennsylvania Supreme Court, but the Court denied his petition on November 17, 2020.

Bazzley filed the present counseled petition for a writ of habeas corpus under 28 U.S.C. § 2254 on May 14, 2021. *See* Doc. No. 1. On May 26, 2021, the court referred the case to United States Magistrate Judge Carol Sandra Moore Wells for the preparation of a report and recommendation. *See* Doc. No. 2. Judge Wells subsequently issued an order directing Bazzley to refile his habeas petition to identify each cognizable claim he intended to pursue. *See* Doc. No. 3. Bazzley filed an amended habeas petition on July 1, 2021. *See* Doc. No. 4. The respondents filed a response in opposition to the habeas petition on September 23, 2021. *See* Doc. No. 9.

On June 15, 2022, Judge Wells issued a report and recommendation ("R&R"). *See* Doc. No. 11. In the R&R, Judge Wells identified Bazzley's habeas claims as follows:

> (1) charging him as an adult for crimes committed by him as a juvenile violates his Fifth, Eighth, and Fourteenth Amendment rights; (2) his trial and sentencing violated his Fifth, Eighth, and Fourteenth Amendment rights, given his low intelligence and mental health conditions at the time of the offense; (3) the delay between his crime and the filing of charges prejudiced his defense in violation of his Fifth and Fourteenth Amendment rights; (4) the Commonwealth's use of incriminating statements that he made to an adult probation officer was a violation

of his Fifth and Sixth Amendment rights; (5) the trial court's accreditation of the Commonwealth's expert over the defense's expert was a violation of his due process rights; (6) his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment, given his age and mental health status at the time of the crime; (7) ineffective assistance of trial counsel for failing to explain the consequences of accepting a guilty plea offer; (8) ineffective assistance of trial counsel for advising him to waive his right to a jury trial; (9) ineffective assistance of trial counsel for failing to call his mother and sister as witnesses; (10) the Commonwealth violated his Sixth Amendment right to a jury trial when it did not adequately engage in a jury trial waiver colloquy; (11) the Commonwealth violated his Sixth Amendment right to a jury trial for failing to provide an adequate written jury trial waiver colloquy; (12) the PCRA court violated his Fifth and Fourteenth Amendment rights when it rejected the unrebutted testimony of defense expert Dr. Rotenberg; and (13) the cumulative effect of the alleged constitutional errors so undermined the verdict as to constitute a denial of his constitutional right to due process.

R. & R. at 11 (citing Am. Pet. for Writ of Habeas Corpus by a Prisoner in State Custody (28 U.S.C. § 2254) ("Am. Pet.") at 11–19, Doc. No. 4). After analyzing each claim, Judge Wells found none of Bazzley's claims to warrant habeas relief. *Id*. at 12. Judge Wells concluded that (1) claims one, two, four, five, six, eight, nine, and thirteen were procedurally defaulted, (2) claims three, part of four, seven, ten, and eleven were exhausted and, yet, lacked merit, and (3) claim twelve was not cognizable. *Id*. at 12–31.

On June 15, 2022, Bazzley filed timely objections to the R&R. *See* Doc. No. 12. Bazzley argues Judge Wells erred in making the following four findings: (1) construing claim twelve as a weight of the evidence challenge, (2) that claim one is procedurally defaulted, (3) that claims two and six are procedurally defaulted, and (4) that claim four cannot be considered because Bazzley has not alleged prejudice or actual innocence. *Id.* at 8–10. The respondents did not file a response to the objections. As such, the objections are ripe for review.

## II.      DISCUSSION

### A.      <u>Standard of Review</u>

Upon timely and specific objection by a party to a portion of a report and recommendation issued by a magistrate judge, the district court "is obliged to engage in *de novo* review of only those issues raised on objection." *Morgan v. Astrue*, Civ. A. No. 08-2133, 2009 WL 3541001, at *2 (E.D. Pa. Oct. 30, 2009) (citing 28 U.S.C. § 636(b)(1) and *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)). In conducting this review of the report, the court may "accept, reject, or modify, in whole or in part," the report's findings and recommendations. *Id.* (quoting 28 U.S.C. § 636(b)(1)).

As to whether a claim is procedurally defaulted, generally, a federal court may consider a habeas petition only after the petitioner has exhausted available state remedies, which means the petitioner must "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). When a petitioner has failed to exhaust a claim by failing to "fairly present" it to the state courts, the claim is considered to have been procedurally defaulted if the petitioner may no longer seek further relief on the claim in state court. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). In such cases, exhaustion is futile, and the court may only reach the merits of the claim if the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000).

However, to fairly present a federal claim to a state court, a habeas petitioner "need not have cited 'book and verse' of the federal constitution." *Briston v. Wholey*, 307 F. App'x 616, 618

10

(3d Cir. 2009) (per curiam) (quoting *McCandless*, 172 F.3d at 261). For example, the petitioner

may present the claim through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*McCandless*, 172 F.3d at 261 (quoting *Evans v. Ct. Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227,

1232 (3d Cir. 1992)).

### B.      Analysis

### 1.      Objection to Judge Wells' Determination that Claim Twelve is a Weight of the Evidence Challenge

In his objections to the R&R, Bazzley first argues Judge Wells erred in her resolution of

claim twelve.[4] *See* Objs. to the Magistrate's R. & R. ("Objs.") at 8, Doc. No. 12. In claim twelve,

Bazzley contends the PCRA court violated his constitutional rights by rejecting the unrebutted

testimony of Dr. Rotenberg that Bazzley was incompetent to reject the Commonwealth's plea

offer. *See* Am. Pet. at 18–19. Judge Wells concluded that such a claim is not cognizable, because

it constitutes a weight of the evidence claim, and federal courts are foreclosed from reevaluating

the credibility of witnesses on habeas review. *See* R. &. R. at 12. Bazzley objects, arguing that

because the testimony was unrebutted, "[f]or any court to essentially say 'I'm not gong [sic] to

believe this expert testimony even though there is nothing to rebut it' is [sic] violation of

[Bazzley's] constitutional right to Due Process." Objs. at 8.

Although Bazzley does not reference this in his objection, the court must preliminarily

reject the portion of the R&R which states that Bazzley's contention in claim twelve is not

---

[4] The court notes that in Bazzley's amended habeas petition, this claim is labeled as a duplicate "Claim Ten," not Claim Twelve. *See* Am. Pet. at 18–19.

cognizable. *See* R. & R. at 12; Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). While the report correctly notes that weight of the evidence claims relating to the evidence presented at trial are not cognizable for habeas review, *see id.* ("Weight of the evidence claims challenge 'issues of credibility,' arguing that 'a greater amount of credible evidence supports one side of an issue or cause than another.' *Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982). Federal courts are precluded from reevaluating the credibility of witnesses on habeas corpus review. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). As a result, *Marshall* and *Tibbs* teach that a weight of the evidence claim is not a cognizable basis for federal relief."), Bazzley is not raising a weight of the evidence claim relating to what happened at trial. Instead, he is claiming that the PCRA court should have found that he was incompetent at the time he rejected the Commonwealth's plea offer and found his expert credible when he opined that Bazzley was incompetent.

As such, claim twelve is cognizable and the proper standard of review is as follows:[5]

> AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations. Specifically, it provides:
>
> > (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[5] Judge Wells applied the standard for weight of the evidence claims dealing with trial testimony, and found claim twelve not cognizable for federal habeas review because, *inter alia*,

> challenges to the weight of the evidence presented at trial are not cognizable claims. Weight of the evidence claims challenge "issues of credibility," arguing that "a greater amount of credible evidence supports one side of an issue or cause than another." *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). Federal courts are precluded from reevaluating the credibility of witnesses on habeas corpus review. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

R. & R. at 12.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> 28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). Therefore, the PCRA court's determination as to Dr. Rotenberg's credibility is potentially subject to two levels of deference under sections 2254(d) and 2254(e)(1).

As correctly noted by the Superior Court, "the PCRA court was free to accept or reject all, part, or none of Dr. Rotenberg's testimony [sic] and make the relevant credibility determinations based thereon." *Bazzley II*, 2020 WL 2520283 at *8 (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)). Moreover, "the PCRA court carefully considered Dr. Rotenberg's testimony, as well as the testimony offered by Bazzley, Bazzley's family members, and Trial Counsel during the PCRA hearing." *Id.*; *see also* PCRA Ct. Op. at 4–5 (summarizing Dr. Rotenberg's testimony at PCRA hearing).[6] Although the PCRA court did not specifically reference Dr. Rotenberg's testimony in its analysis of Bazzley's competency claim with respect to the plea offer, *see* PCRA Ct. Op. at 12–13,[7] the PCRA court rejected Dr. Rotenberg's opinion (and Bazzley's argument) that the court should apply a different competency standard when determining whether a defendant is competent to stand trial and when a defendant is considering whether to enter a guilty plea. *See id.* at 12. The PCRA court also implicitly declined to credit Dr. Rotenberg's opinion that Bazzley was incompetent to decline the guilty plea offer by explaining that the court had determined that

---

[6] This portion of the PCRA court's opinion is located at Doc. No. 9-3 at ECF pp. 280–81.
[7] This portion of the PCRA court's opinion is located at Doc. No. 9-3 at ECF pp. 288–89.

Bazzley was competent to stand trial and that Bazzley "had, at a relatively approximately time and [sic] with Trial Counsel, entered into a guilty plea agreement in a sister county." *Id.* At bottom, Bazzley has not explained, other than by pointing out that Dr. Rotenberg's expert opinion was unrebutted at the time of the PCRA hearing, *see* Objs. at 8, how the state courts made an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), considering, *inter alia*, the PCRA court explained that a different competency standard did not apply and the PCRA court had previously determined that Bazzley was competent to stand trial. Moreover, to the extent applicable, he has not rebutted the state court's factual findings by clear and convincing evidence. Accordingly, the court will not adopt Judge Wells' recommendation regarding whether claim twelve is cognizable in this habeas action, but will still conclude that Bazzley is not entitled to habeas relief under the appropriate levels of deference set forth in 28 U.S.C. §§ 2254(d) and (e)(1). *See, e.g.*, *Brooks v. Garman*, Civ. A. No. 17-cv-5604, 2018 WL 8756260, at *6–7 (E.D. Pa. Nov. 8, 2018) ("A state court's factual findings are presumed correct on habeas review, unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This Court must accept the PCRA Court's factual findings and credibility determinations. Here, Petitioner has not rebutted, with clear and convincing evidence, the state courts' findings and credibility determinations that trial counsel communicated the plea deal to Petitioner." (internal citations omitted)); *Johnson v. Fisher*, Civ. A. No. 13-4758, 2016 WL 5076123, at *6 n.17 (E.D. Pa. Sept. 20, 2016) (discussing possible applicability of sections 2254(e)(1) and (d)(2) to PCRA court's credibility finding, but declining to decide which standard applied "[b]ecause [petitioner] has not shown the PCRA court's credibility assessment was erroneous under either standard" (citations omitted)).

14

**2.      Objection to Judge Wells' Determination that Claim One is Procedurally Defaulted**

In his second objection to the R&R, Bazzley contends Judge Wells erred in concluding claim one is procedurally defaulted. *See* Objs. at 8–9. In claim one, Bazzley argues that being tried as an adult for crimes committed as a juvenile violated his rights under the Fifth, Eighth, and Fourteenth Amendment. *See* Am. Pet. at 11–12. Judge Wells found this claim to be procedurally defaulted because although Bazzley argued that the trial court erred in not transferring his case to juvenile court as part of his appeal to the Superior Court, that claim centered on prosecutorial delay in failing to file charges, as opposed to a constitutional challenge under the Fifth, Eighth, and Fourteenth Amendments. *See* R. & R. at 14–15. Bazzley objects, entirely relying on language used by his attorney on direct appeal, presumably in his appellate brief, which referenced due process rights. *See* Objs. at 9 (indicating that direct appellate counsel described appellate issue as: "Whether the [c]ourt erred in refusing to dismiss the case as the case was brought in violation of [Bazzley's] due process rights, in that due to the extreme delay in bringing charges and investigating those charges [Bazzley] lost the opportunity to have his case heard in juvenile court. This is the right referenced in <u>Barker v. Wingo</u>, 407 U.S. 514. 92 S.Ct. 2182[] (1972).").[8]

While it is true that Bazzley referenced a violation of due process rights in his direct appeal, Bazzley misrepresents the context. As explained by the Superior Court,

> [o]n direct appeal, Bazzley averred the following: the trial court erred in failing to transfer his case to juvenile court; the trial court erred in refusing to dismiss his case, which was brought in violation of Bazzley's *due process rights*, due to the delay in the Commonwealth filing charges against Bazzley . . . .

*Bazzley II*, 2020 WL 2520283, at *11 n.2 (emphasis added). Thus, on direct appeal, Bazzley couched his due process claim in the Commonwealth's delay in filing charges against Bazzley.

---

[8] Although Bazzley does not cite to the location of this quotation in his objections, it appears that it was the seventh issue raised on direct appeal to the Superior Court. *See* Doc. No. 9-3 at ECF p. 10.

*See* Appellant's Br. at 32–37.[9] The claim at issue in Bazzley's operative habeas petition does not involve prosecutorial misconduct, but rather alleges the acts of charging and trying Bazzley as an adult were in and of themselves a violation of the Fifth, Eighth, and Fourteenth Amendments.[10] This claim, although it also touches on how Bazzley was not charged and tried as a juvenile, is separate and distinct from the claim he raised on direct appeal. Therefore, Bazzley did not "fairly present" this new federal claim to the state courts, and the claim is unexhausted for federal habeas purposes.

Because Bazzley failed to fairly present his federal claim to the state courts, and any attempt to raise it now would be time-barred, *see* 42 Pa. C.S. § 9545(b), the claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). As correctly noted by Judge Wells, Bazzley "does not allege cause and prejudice or actual innocence to excuse the default." R. & R. at 15. Accordingly, the court agrees with Judge Wells' determination that claim one is procedurally defaulted, and as such, Bazzley's second objection to the report and recommendation is overruled.

---

[9] This portion of Bazzley's appellate brief is located at Doc. No. 9-3 at ECF pp. 34–39.

[10] In the amended habeas petition, Bazzley explained his claim as follows:

> . . . The Supreme Court of the United States has previously held that holding juvenile[s] who commit crimes to the exact same standard as adults who commit the same crime is a violation of rights by the aforesaid amendments of the Constitution. See Roper v. Simmons, 543U.S. 551 (2005) (holding that it is unconstitutional for a state court to impose capital punishment on an individual for crimes that individual committed while under the age of 18); Graham v. Florida, 560 U.S. 48 (2010) (holding that that sentencing a juvenile to life without parole for committing a nonhomicide offense constituted cruel and unusual punishment). *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that the imposition of a sentence of life without the possibility of parole is unconstitutional for juvenile offenders).

> . . . Holding Phillip Bazzley accountable under adult standards for offenses he committed when he was 13 years old and 14 years old is a denial of his due process rights and constitutes cruel and unusual punishment.

Am. Pet. at 12.

**3.     Objection To Judge Wells' Determination the Claims Two and Six are Procedurally Defaulted**

In his third objection, Bazzley contends Judge Wells erred in determining claims two and six are procedurally defaulted. *See* Objs. at 9. Starting with claim two, Bazzley asserts that because he was held "accountable under the same standards as a sane and mentally healthy individual," his trial and sentencing violated his rights under the Fifth, Eighth, and Fourteenth Amendments. *See* Am. Pet. at 12. As to claim six, Bazzley argues his sentence amounts to cruel and unusual punishment. *See id.* at 15. Judge Wells determined Bazzley did not raise either of these claims on direct or PCRA appeal, and therefore claims two and six are unexhausted and procedurally defaulted. *See* R. &. R. at 11.

Bazzley objects, arguing the seventh claim raised on direct appeal by his appellate counsel somehow encompasses both claims. *See* Objs. at 9 (asserting that appellate counsel described issue as: "Whether [Bazzley's] sentence was excessive and an abuse of discretion, considering [Bazzley's] age when the offense was committed, mental health, lack of a prior record and cooperation with the [c]ourt system in that [Bazzley] admitted the offenses, waived his preliminary hearing, waived his right to a jury trial and conducted minimal cross-examination of the victims.").[11] In the alternative, Bazzley argues that the failure of appellate counsel to use the correct language amounts to ineffective assistance of counsel. *See id.*

After reviewing the record, Bazzley did not raise either of these claims on direct or PCRA appeal. *See Bazzley I*, 2013 WL 11262931, at *3 (identifying issues raised on direct appeal); *Bazzley II*, 2020 WL 2520283, at *6 (identifying issues raised on appeal from PCRA denial). The mere mention that the sentence imposed was "excessive" considering the circumstances does not

---

[11] This claim is included on page 7 of Bazzley's appellate brief. *See* Doc. No. 9-3 at ECF p. 10. The court notes that although Bazzley indicates that this was the seventh claim raised, it was actually the sixth claim. *See id.*

amount to what is described in claims two and six. In particular, Bazzley is raising federal constitutional claims here, whereas, on direct appeal, he was challenging the discretionary aspects of his sentence. *See Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002) (explaining that claim that sentence was manifestly excessive challenges discretionary aspect of sentencing); *see also Richardson v. Barone*, Civ. A. No. 09-314, 2011 WL 587164, at *6 (E.D. Pa. Jan. 25, 2011) ("The severity of the sentence alone constitutes no ground for habeas relief, *Jackson v. Myers*, 374 F.2d 707, 711 n. 11 (3d Cir. 1967), provided the sentence is within statutory limits."); *Lucas v. Piazza*, Civ. A. No. 07-3556, 2010 WL 3076194, at *4 (E.D. Pa. Aug. 5, 2010) ("Sentencing is a matter of state criminal procedure and so long as the sentence imposed falls within the statutory bounds, it does not implicate federal constitutional issues.").

Because Bazzley failed to fairly present these federal claims to the state courts, and any attempt to raise them now would be time-barred, *see* 42 Pa. C.S. § 9545(b), the claims are procedurally defaulted. *See Coleman*, 501 U.S. at 729. As to Bazzley's newly included claim of ineffective assistance of counsel (seemingly to excuse any procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012)), the court will not consider it because Bazzley could have properly presented this argument to Judge Wells and failed to do so. *See Eaddy v. Glunt*, Civ. A. No. 15-1399, 2016 WL 3538590, at *4 (E.D. Pa. June 29, 2016) ("Local Rule 72.1(IV)(c) of this Court provides that after a Magistrate Judge's recommendations are filed, 'new issues and evidence shall not be raised...if they could have been presented to the magistrate judge.'"); *see also In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 444 (3d Cir. 2020) ("Arguments not presented to a magistrate judge and raised for the first time in objections to the magistrate's recommendations are deemed waived. A passing reference to an issue does not suffice to preserve it." (citations and internal quotation marks omitted));

*Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) ("[B]ecause Appellant raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived."); *Mayo v. Giroux*, No. 14-cv-1144, 2015 WL 3872355, at *3 (E.D. Pa. June 23, 2015) (concluding that section 2254 habeas petitioner's claim of ineffective assistance of counsel was not properly before the court because he did not include it in his section 2254 petition or raise it before the Magistrate Judge). Therefore, the court overrules Bazzley's third objection to the R&R.

### 4.    Objection To Judge Wells' Determination that Claim Four Cannot be Considered Because Bazzley has not Alleged Prejudice or Actual Innocence

In his final objection to the R&R, Bazzley disagrees with Judge Wells' determination that part of claim four, his Fifth Amendment claim, cannot be considered on its merits because he has not alleged cause and prejudice or actual innocence to overcome procedural default. *See* Objs. at 10. In claim four, Bazzley contends the Commonwealth's use of his incriminating statements made to an adult probation officer violated his Fifth and Sixth Amendment rights. *See* Am. Pet. at 13. Judge Wells concluded the Fifth Amendment part of this claim is unexhausted and procedurally defaulted because Bazzley did not raise this claim on direct or PCRA appeal. *See* R. & R. at 15–16. Bazzley asserts that Judge Wells erred because he has consistently asserted his actual innocence. *See* Objs. at 10 ("The Petitioner's argument from the outset has been that he is innocent as he was not guilty by reason of lacking mental capacity. As for prejudice, that has also been alleged. Has [sic] the Petitioner been tried in the juvenile court system, he would have been released from prison years ago.").

The court agrees with Judge Wells' determination that the Fifth Amendment part of claim four is procedurally defaulted because he did not raise the claim on direct or PCRA appeal and, as

such, will overrule Bazzley's final objection. *See Bazzley I*, 2013 WL 11262931, at *3 (identifying issues raised on direct appeal); *Bazzley II*, 2020 WL 2520283, at *6 (identifying issues raised on appeal from PCRA denial). The court will overrule this objection for two reasons: First, the objection is meritless under the standards for cause and prejudice and actual innocence. Second, Bazzley failed to present this argument to Judge Wells, and as previously discussed, he cannot raise it for the first time in his objections to the R&R.

As to the first reason,

[t]o establish cause, the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at ... trial created a *possibility* of prejudice, but rather that the constitutional violation worked to his *actual* and substantial disadvantage.

*Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) (internal citations and quotation marks omitted). Here, Bazzley has offered no arguments, in either his amended habeas petition or his objections, amounting to cause and prejudice under the *Shinn* standard. As to actual innocence, "[a]ctual innocence means "factual innocence, not mere legal insufficiency." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)). "New reliable evidence is almost always required to establish actual innocence." *Id*. Here, Bazzley offers no new evidence establishing that no reasonable fact-finder could have found him guilty of the crimes he was convicted of. In fact, he offers no new evidence at all.

Regarding the second reason supporting overruling the objection, Bazzley did not present any cause and prejudice or actual innocence argument in his amended habeas petition before Judge Wells. *See* Am. Pet. at 13–14. Thus, he cannot now bring these arguments for the first time in his objection to the R&R. *See Eaddy*, 2016 WL 3538590 at *4; *see also In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d at 444. Accordingly, as

Bazzley has either waived this argument or failed to demonstrate it has merit, the court will overrule Bazzley's fourth objection to the R&R.

### III.   CONCLUSION

For the reasons set forth above, the court will overrule Bazzley's second, third, and fourth objections to the R&R. The court agrees with Judge Wells' determination that those claims raised in the section 2254 habeas petition are procedurally defaulted. As to claim twelve, the court declines to adopt the entirety of Judge Wells' recommendation, but still finds that Bazzley's claim does not warrant habeas relief. Therefore, the court agrees with Judge Wells' overall recommendation that the court deny the habeas petition and decline to issue a certificate of appealability.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

21